# HYRUP v. HYRUP.

No. 4322. Decided March 15, 1926. (245 P. 335.)

1. DIVORCE. `Evidence *held* not to justify granting husband divorce, under Comp. Laws 1917, § 2995, for cruelty of wife.[1]

2. DIVORCE. Courts can grant divorces only for particular causes prescribed by law, and then only when grounds or cause for divorce is proved by substantial and satisfactory evidence.

Appeal from District Court, Third District, Salt Lake County; *W. S. Marks,* Judge.

Suit for divorce by Andrew S. Hyrup against Karen R. Hyrup, with counterclaim by defendant. Decree for plaintiff, and defendant appeals.

REVERSED, with directions.

*C. E. Norton,* of Salt Lake City, for appellant.

*A. A. Duncan,* of Salt Lake City, for respondent.

---

[1] *Doe* v. *Doe*, 158 P. 781, 48 Utah 200.
Corpus Juris-Cyc. References:
[1]   Divorce 19 C. J. p. 142 n. 52.
[2]   Divorce 19 C. J. p. 36 n. 63; p. 37 n. 67; p. 131 n. 97.

CHERRY, J.

After having been married for 45 years, the plaintiff, aged 70 years, sued his wife, aged 66 years, for a divorce upon the grounds of cruelty. In substance he alleged that for 5 years last past his wife had been of "a mean and cross disposition," had persistently and habitually abused the plaintiff by calling him vile and insulting names, and addressing him with indecent and humiliating remarks; that during the time when she was "not so abusing the plaintiff she has been sullen and cross and has moped about the house without speaking to the plaintiff and without noticing him, except to sneer at him"; that the defendant "during all of said time has manifested the greatest hatred toward the plaintiff, and has told him repeatedly that she despised him and that her life with him had been nothing but hell, and on many occasions * * * she has begged the plaintiff to leave her and get a divorce, and has stated to him on many occasions, 'I am so disgusted with you that I don't want you to stay here any longer,' and also, 'I shall not be sorry to be through with you' "; that in consequence of defendant's hatred and treatment of him he was compelled, on October 25, 1924, to leave the home where he and defendant had been living in Salt Lake City, Utah, and that ever since they had been living separate and apart from each other. It was alleged that the hatred of defendant toward the plaintiff was so great that it was impossible for the plaintiff to live with her, and that her conduct and treatment of him had caused and still causes him great mental distress and suffering.

The defendant denied the allegations of cruelty against her, and by way of counterclaim alleged adultery and cruel treatment against her husband, upon which grounds she prayed for a divorce and a division of the property of the plaintiff.

A trial by the court resulted in findings in favor of the plaintiff, upon which a decree was entered granting the plaintiff a divorce upon the grounds of cruelty. The decree also provided for the division of certain real property, valued at approximately $10,000, between the parties.

The defendant has appealed from the judgment, and by her assignments of error assails the findings of the trial court upon the facts in issue, and complains that the division of property made by the trial court was unjust and inequitable to her. We find it necessary to consider only the question whether sufficient ground for divorce was established by either party to the action. The evidence in the case consists of the testimony of the parties themselves and certain letters addressed to the plaintiff. No other witness was produced, and there is no substantial dispute between the parties upon the essential facts in the case.

The parties were married at Salt Lake City in 1880, and they never had any children. They lived together apparently without serious disagreement until the year 1912, when they were residing on a ranch in California. For reasons not clearly appearing, but by obvious mutual agreement, they separated at that time. The husband left the wife. She filed an action for divorce upon the grounds of desertion, and obtained, by default, an interlocutory decree of divorce and an award of the ranch property upon which she resided. This action was finally dismissed. The ranch property was exchanged for a dwelling house, incumbered by a mortgage, in Oakland, Cal., to which the wife removed and where she resided for a number of years. After his separation from his wife, the plaintiff seems to have become enamored with another woman (Mrs. S.) with whom he lived at intervals. He admitted his desire to marry her. Numerous letters indicating her strong affection for him later were discovered and read by the defendant. In the year 1914 the plaintiff returned to Salt Lake City. Five years later the defendant, having lost her property in Oakland, also came back to Salt Lake City, in a sick and dependent condition. The plaintiff, learning of her situation, took her into his house. With the exception of two months they lived together in the same house from January, 1920, to November 3, 1924. During this time she performed the usual duties of housekeeper, and he supported her, and held her out as his wife. She, jointly with him executed contracts and conveyances of real property as his wife. It was stated by both of them that they

did not resume "marital relations" with each other during this period. It was strongly intimated, however, that this intimacy was omitted because of the physical incapacity of the plaintiff.

On November 3, 1924, the plaintiff left his wife, and on January 14, 1925, commenced this action against her. The evidence in support of the plaintiff's allegations of cruel treatment consisted of his own testimony and two letters written to him by his wife. In substance he testified:

"My wife has been sullen off and on. Four years ago she left home and stayed away two months. She became sick, and I took her back. Upon her return she said, 'Now I am in the house, and you can get out whenever you want." She acted cruel to me lots of times, called me down before a lot of people, and said I was no man at all. Years ago she called me a hypocrite and liar; she showed my love letters to my friends, and told me to leave the house; she wanted me to publish my fault and failing, and I would not do that; my private business was my private business. Because I joined the church she was sullen and wouldn't talk to me for two weeks. In October, 1924, she gave me notice to leave, and was so disgusted with me that she couldn't stand it to look at me. A week later I left the house, and in a few days I called at the house to get some of my things, and she locked me out and I couldn't get in the house. I haven't been back since. She wanted me for a meal ticket right along, wanted me to be a slave all the time; in California she treated me in a way I couldn't stand it. She had me up before the church officials time and again for my any little hobby thing she got in her head; that is why I left home. She wouldn't even stay in the room and eat in the room with me, she went into another room and ate her meals. That lasted for some time. In the last five years she has made the remark before other people in our house that I was no man at all. She has been quarrelsome and unkind to me. She would make insulting remarks to me and always complained that she had to do this and that and everything, and this eternal nagging. Since the divorce case in Californa I have never lived with her as my wife; the last five years she has been my housekeeper. I got up and lit the fires and got my own breakfast; lots of times I gave her what she wanted in bed. I think I treated her kind, and got the cold shoulder all the time. During the last four years we have quarreled occasionally. I am not of a quarrelsome disposition, but she has a sulky disposition and acts mean."

Two letters from the defendant to the plaintiff were introduced in evidence by the plaintiff. One of them was written

shortly before the commencement of this action and one thereafter. . The letters are replies to letters written to her by the plaintiff, and refer mainly to their difficulties and troubles with respect to their religious and church relations while they were living in California. The burden of the letters is that the plaintiff had committed a sin and a wrong against defendant which had not been righted. There is no objectionable matter in the letters, except general expressions such as, "You say you are to start the divorce. You are welcome to it. I would never live with you again." "I shall not be sorry to be done with you." "I have passed through all the hell with you that I want to, and you are not a man but only the imitation of a man, and I have been deprived of what has been my greatest desire on earth, and where is my reward for it." "I have no objection to be divorced from you; my life with you has been a hard and a bitter one," etc.

On cross-examination the plaintiff said that his wife stole letters written to him by Mrs. S. out of his tool box, and showed them to his friends; that she "throwed up" the letters when they quarreled; that they quarreled mostly on church matters; that he offered her a divorce years ago; that she had done everything to harm him in the church; that the main topic was when he reunited with the church; that she was jealous of him for it and called him a hypocrite; that she told him he was no man at all; that what she meant "is a private matter with me." This was the whole of the evidence in chief for the plaintiff.

The defendant, testifying in her own behalf, said in substance that she returned to her husband at his invitation and went to live with him in Salt Lake City January 17, 1920. The following summer she found letters written to him by Mrs. S. in his tool box; they quarreled about these letters; she showed some of them to two church officers who were old friends. As a result of the quarrel she left and remained away two months, and then returned to him; that she kept house, cooked the meals, made the beds, and stayed at home, and that he never made any complaint on that account. She said they had only two real quarrels, one when she found

the letters from Mrs. S. and the other in October, 1924, when he rejoined the church. She admitted calling him a hypocrite and saying she was disgusted with and despised him, and that she said "you are not a man" for very good reasons. She stated that there was a secret hidden thing which she would not testify about that prevened them from living happily together, and which was the cause of the trouble beween them. She denied that she ever locked him out of the house, and said if he was ever at the house when it was locked she did not know of it. She said she had no animosity towards him, and that after he left her the last time she had sent him dishes and cooking utensils and had often cooked food and sent it to him.

The plaintiff, in rebuttal, testified that after being sued for a divorce in California he lived with Mrs. S., and that she later lived with and kept house for him in Salt Lake City for 1½ years until the year 1917, when she left. He admitted familiarities with her, suggesting illicit relations.

Upon substantially the foregoing evidence the trial court found "that for more than five years last past the defendant has been guilty of cruel treatment of the plaintiff, to the extent of causing him great mental distress," etc.

The sufficiency of the evidence to support the finding of cruelty and to constitute grounds for divorce is the decisive question in the case.

Comp. Laws Utah 1917, § 2995, prescribes the several causes for which the dissolution of the marriage contract may be decreed, one of which is "cruel treatment of plaintiff by defendant to the extent of causing bodily injury or great mental distress to plaintiff."

We think the evidence of the wife's conduct in this case fails to establish legal cruelty within the definition of the statute and the policy of the law. In *Doe* v. *Doe*,  1 158, P. 781, 48 Utah, 200, this court, in dealing with the subject of the wife's cruelty to the husband causing him great mental distress, said:

"The adjudged cases show that courts, on the ground of cruelty, grant the wife a decree on much less evidence than they do the husband. That rests on sound principles, for acts and conduct on

the part of a husband may well constitute cruelty to the wife causing her great mental distress, when similar acts and conduct on her part may not constitute cruelty to him, or cause him great mental distress. Before a decree is granted the husband on such ground, it ought to be a somewhat aggravated case."

Measured by such standard we think the evidence in the case at bar is wholly insufficient to justify a decree of divorce upon the grounds of cruelty. There were but two serious quarrels complained of, and these were widely separated in point of time, and it does not appear that the wife's conduct or language on either occasion was unprovoked or unjustified. On the other hand it quite satisfactorily appears that she had considerable provocation. There is also an utter failure to show that the plaintiff suffered great or any mental distress on account of the alleged cruelty of his wife. There was no direct testimony upon this subject, and the evidence is not of such nature that that essential fact could be inferred.

Upon the whole record, we think there is no substantial reason shown why these parties should be divorced from each other. It is not enough that they both desire a divorce or refuse to live with each other. Courts are not authorized to grant divorces except for the particular causes **2** prescribed by law, and then only when the grounds or cause for divorce is proved by substantial and satisfactory evidence.

There was no proof offered in support of the allegations of the defendant's counterclaim.

The judgment and decree appealed from is reversed and vacated, and the trial court is directed to dismiss the action. Respondent to pay costs in both courts.

GIDEON, C. J., and THURMAN, FRICK, and STRAUP, JJ., concur.