## CORDNER v. CORDNER.

No. 5771. Decided October 23, 1936. (61 P. [2d] 601.)

*Larson & Larson,* of Manti, for appellant.

*Brockbank & Pope,* of Provo, for respondent.

MOFFAT, Justice.

This is an action for divorce brought by the husband against the wife on the grounds of cruelty. The cruelty complained of stated generally as conclusions is that of conduct and statements and general demeanor causing "great mental distress, anguish and suffering."

The parties were married at Orem, Utah county, Utah, on the 18th day of July, 1934. There are no children living, the issue of the marriage. The defendant gave premature birth to a child about the middle of October, 1934.

The alleged cause of action of the cruelty of which complaint is made, is set out in plaintiff's complaint as follows:

"That shortly after the marriage of plaintiff and defendant they took a trip through Yellowstone Park. That while driving to said Yellowstone Park, and after traveling about 250 or 300 miles, plaintiff desired to camp for the night, but the defendant insisted that they go on farther, whereupon the plaintiff asked the defendant to drive the car and made some suggestions as to the operation of the same, whereupon the defendant became angry and said to the plaintiff 'You drive your own G—— d—— car, I have ridden with a lot of other people and have driven their cars and they have never suggested to me how to drive.' That all the time during said trip the defendant became annoyed and angry at the plaintiff because he desired to stop and see the scenery and sights that were of interest to him, and the defendant always insisted on either staying in the cabins or traveling

and whenever she did not get her way she would sulk and pout and would not speak to the plaintiff for hours thereafter.

"That while in Yellowstone Park the plaintiff and defendant got in a boat to fish and while rowing the boat, plaintiff accidently, through the manipulation of the oars caused a little water to be sprayed or splashed upon the defendant, whereupon defendant became angry and did not speak to the plaintiff for several hours.

"That on one occasion in the fall of 1934, plaintiff went with three other men to get some cattle down at Lake View and upon returning home, the plaintiff and the men with him, went to a picture show at Orem, Utah, that while seated in said show house a messenger came to the plaintiff and said he was wanted at the door. On going to the door the plaintiff found the defendant waiting for him; whereupon the defendant said to plaintiff, 'come on we are going.' The plaintiff said, 'Where are we going,' and she said 'You are going to take me to town so I can catch the Orem and go to Salt Lake City.' That plaintiff remonstrated with the defendant, but defendant insisted; whereupon plaintiff drove the defendant to the Orem Station in Provo, Utah, but after coming to Provo, the defendant did not go any where, but returned home with plaintiff.

"That on divers times and occasions since the marriage of plaintiff and defendant, the defendant has threatened to leave the plaintiff and go to Salt Lake City or elsewhere and every time any little dispute or misunderstanding arose between the plaintiff and defendant, she would threatened to leave and go to Salt Lake City, and upon several occasions defendant has insisted that the plaintiff take her to Provo that she might leave on the train for Salt Lake or other places.

"In the middle of November, 1934, plaintiff and defendant with other parties attended a picture show and afterwards went to the Green Parrot, a place of amusement located in Orem, Utah, and while they were there the defendant without any reason or excuse whatsoever and without saying anything to plaintiff left the building. That the plaintiff and the parties that were with him after they found the defendant had left the building endeavored to find her and take her home, but they were unable to locate her. Defendant came home late that night and told plaintiff that she went riding with some men and they kicked her out of the car somewhere on the Canyon road and she was forced to walk home.

"That every time the plaintiff went away from the home of the plaintiff and defendant, defendant always wanted to know where he was going and wanted to go with him and if she went with the plaintiff she always was impatient and annoyed the plaintiff if he stopped or talked to anyone and insisted that he return home immediately.

If plaintiff would go without the defendant even though he were going to the store or on business, when he returned she would become angry and would not speak to him for hours.

"That when any little difference arose between the plaintiff and the defendant, and whenever plaintiff did not do as defendant wanted, she would threaten to leave the plaintiff and go to Salt Lake City or elsewhere, and on divers times and occasions has threatened to obtain a divorce.

"That on the 11th day of December, 1934, defendant's brother called at the home of the plaintiff and defendant at Orem, Utah, and the defendant without any reason, or excuse and against the will of the plaintiff packed all of her personal belongings and belongings of the plaintiff and defendant such as dishes, silver ware, all the bedding, many cooking utensils and all other things that could be conveniently packed and placed them in the car of defendant's brother, she then told plaintiff that she was going back home to live and she then left with her brother and has continued to live separate and apart and away from the plaintiff ever since.

"That ever since the marriage of the plaintiff and defendant, the defendant seemed to be insanely jealous and would become angry and offended if plaintiff treated other people with common civility. That this attitude on the part of the defendant has caused the plaintiff a great deal of annoyance and embarrassment.

"That on divers times and occasions the defendant has threatened to end it all by committing suicide, and these statements by the defendant has caused the plaintiff to worry and suffer a great deal for fear the defendant might carry out her threats.

"That due to the acts and statements of the defendant as aforesaid and due to her conduct toward the plaintiff, plaintiff has been greatly annoyed and vexed to the extent that there has been no peace or happiness in the married life of plaintiff and defendant and the said acts, statements and conduct of the defendant as aforesaid toward the plaintiff has caused him great anxiety and worry and mental pain and suffering to the extent that the association of the plaintiff and defendant cannot longer be endured."

Defendant interposed a demurrer to the complaint upon the ground of insufficient allegations of fact to state a cause of action upon the claimed ground of cruelty. The demurrer was overruled, and appellant assigns the action of the court in that regard as error. An answer was filed and the issue tried to the court resulting in a decree of divorce in favor of the plaintiff.

We think the trial court erred in overruling the demurrer and that the assignment of error in that regard is well taken. No overt act involving moral delinquency, moral turpitude, or breach of fundamental marital relations is alleged in the complaint. No assertion is made of defendant at any time holding the plaintiff up to ridicule, public embarrassment, or derision. No charge is made of marital incompatibility or that the relation has been indicated by defendant to be intolerable, or that plaintiff was personally obnoxious or that the approach or society of either to the other was distasteful. Generally speaking, quite the contrary is shown. Even the language alleged to have been used with a single exception is free from coarseness, profanity, or intimations of personal delinquencies or moral turpitude. There is no allegation of constant nagging, harassing, or annoying conduct, no rebuking of plaintiff publicly or privately with intent to humiliate plaintiff or to injure his character or reputation.

The incidents alleged, and when condensed, reveal that they are trifling matters that could and should be adjusted. Two people who cannot adjust themselves should not by the court be required to maintain a relationship that has become intolerable to them. No such situation is revealed by the allegations of the complaint. Some nagging and faultfinding by each spouse is to be expected, and the husband,

"being the stronger, ought to take and forbear much of it with patience. * * * What may be cruelty causing great mental distress in one case may not be in another. Each case must depend upon its own facts and circumstances. The adjudged cases show that courts, on the ground of cruelty, grant the wife a decree on much less evidence than they do the husband. That rests on sound principles, for acts and conduct on the part of a husband may well constitute cruelty to the wife causing her great mental distress, when similar acts and conduct on her part may not constitute cruelty to him, or cause him great mental distress. Before a decree is granted the husband on such ground, it ought to be a somewhat aggravated case." *Doe* v. *Doe*, 48 Utah 200, 158 P. 781, 786; *Hyrup* v. *Hyrup*, 66 Utah 580, 245 P. 335.

In the instant case defendant is alleged to have said on a trip to Yellowstone Park when some difference arose about driving the car, "You drive your own G——d——car," which defendant modified in her testimony to "You drive your own d—— car." While boating upon the Yellowstone Lake when plaintiff splashed defendant with water, it is alleged she "became angry and did not speak to plaintiff for several hours." The foregoing are representative allegations. The complaint having been quoted in full, it is unnecessary to further indicate the character of the conduct alleged to constitute the cruelty. Nothing is alleged to justify an inference that either party to this action was supersensitive, or that there was a refinement of feeling easily shocked, or that tender emotions might be disturbed easily.

Plaintiff's complaint limits the cause of action to the statutory ground of cruelty. 40-3-1, subd. 7, R. S. Utah 1933, provides as a ground for divorce,

"Cruel treatment of the plaintiff by the defendant to the extent of causing bodily injury or great mental distress to the plaintiff."

The complaint falls short of the necessary allegations as this statute has been construed.

The marriage covenant creates a status not lightly to be regarded. It is presumed that before a man and a woman marry they have wisely, carefully, discreetly, and reverently considered the matter. The institution of marriage is a sacred one protected by the law, fostered by religion, and maintained and encouraged by organized society. Once entered into, good cause for separation must be alleged and proved before the covenant may be set aside. The institution of marriage is not a failure. There are those who fail to measure up to the requirements—whose weaknesses and frailties demonstrate that they are not of the capable ones. Divorce is the decree that determines, not that marriage is a failure, but that marriage has discovered the weaknesses of one or both of the parties. Before a divorce may be granted, it must be alleged and proved that

the further maintenance of the relationship is incompatible with the public policy of the state, and detrimental, if cruelty is the charge, to the health, morals, or well-being of one of the parties.

Failure of the complaint to state facts sufficient to constitute a cause of action for divorce on the ground of cruelty makes it unnecessary to pass upon the other assignments of error.

We have, however, examined the record, and while plaintiff's testimony may be said to establish the allegations of the complaint, the explanations and versions of the incidents set forth in the complaint as given by defendant lose much of the color and there is much taken out of what is claimed for them by plaintiff. The findings follow the allegations of the complaint. No amendments to the pleadings were requested and none would appear to be required to make them conform to the proof. Certain incidents alleged by plaintiff by his own testimony appear more trifling than as alleged. It may be true that the parties may not be able to again resume the marriage relation by living together as husband and wife. It may be better for them and society that they be divorced. No substantial reason appears why they may not again resume the relation established by this marriage contract. The defendant desires to do so. She has the right to insist upon her legal rights. A little more forbearance and less obstinacy on the part of both may well result in a happy home. No irreconcilable incompatibility appears. *Burtt* v. *Burtt*, 59 Utah 457, 204 P. 91.

Being of the opinion the complaint does not state a cause of action, the judgment of the trial court is reversed, and the cause is remanded, with directions to sustain defendant's demurrer and dismiss the action unless plaintiff desires to amend the same cause of action. Such is the order. Respondent to recover costs.

ELIAS HANSEN, C. J., and EPHRAIM HANSON, J., concur.

FOLLAND, Justice (dissenting).

The complaint, in my opinion, alleges acts constituting cruel treatment to the extent of causing plaintiff great mental distress. The evidence adduced more strongly supports the charge of cruelty than the allegations of the complaint. While many of the acts complained of seem trivial, we have here a course of very annoying conduct culminating in the defendant, without sufficient cause, packing up her belongings and leaving the home provided for her by plaintiff. The trial court found that cruelty had been established. I see no good reason for refusing to grant the relief sought. I therefore dissent.

WOLFE, Justice (dissenting).

I join in the dissent of Mr. Justice FOLLAND and add as a further ground for my dissent the following: The complaint itself alleges that these acts of defendant caused the plaintiff great anxiety, worry, mental pain, and suffering. Unless the acts alleged to have caused the great mental distress are such that no sensitive person should take umbrage, it appears to me that the statement contained in the prevailing opinion that "each case must depend on its own facts and circumstances" cannot obtain fruition. It is only by seeing the parties in court and hearing the evidence that it can be ascertained whether one of the "circumstances" is the sensitive nature of the husband.

I cannot follow the old doctrine that a husband is necessarily less sensitive than the wife, or that "he is the stronger" spiritually while she is physically frailer. I think the realities of life permit of no such generalization. Nor can I subscribe to the doctrine that marriages are sacred in the sense that they are sanctified in heaven. They are a human institution made by earthly people out of material and spiritual considerations which are part of our earthly life. Only in the sense that they give rise to very important social consequences are they to be considered more important and

in a different class than other contracts. I think we should take the humanistic attitude regarding marriages.

The prevailing opinion states: "No assertion is made of defendant at any time holding the plaintiff up to * * * public embarrassmenet." I rather think the incident at the picture show and Green Parrot would in the presence of other parties cause plaintiff embarrassment in public. I think the complaint distinctly charges "marital incompatibility or that the relation has been * * * intolerable." Any man who had a very jealous wife who makes capital of it to require him to toe her mark would find life intolerable. I think, too, the complaint alleges "annoying conduct." In short, I find it to have allegations of the very conduct and results which the prevailing opinion states it fails to charge. There is very little to be gained in keeping this husband tied to this wife, who may now continue to impose her will and carry on her harassments and contrariness to his unhappiness under the protection of this court.