# ALLDREDGE v. ALLDREDGE.

No. 7525.   Decided April 10, 1951.   (229 P. 2d 681.)

See 27 C. J. S., Divorce, Sec. 140. Alimony award, misconduct of wife as affecting, see note 10 A. L. R. 2d, 489. See, also, 17 Am. Jur. 478.

*LaMar Duncan,* Salt Lake City, for appellant.

*Wendell C. Day,* Murray, for respondent.

WOLFE, Chief Justice.

This is an action for divorce wherein the plaintiff, Rue LeRoy Alldredge, prayed for a divorce on the grounds of cruelty resulting in great mental distress, and wherein the defendant, Ida Deseret Jaynes Alldredge, counterclaimed for divorce on the same grounds. From a decree of divorce in favor of the plaintiff and against the defendant on the counterclaim, the defendant appeals. The parties will hereafter be referred to as indicated in the court below.

The plaintiff, who is a man 64 years of age, and the defendant, who is a woman 53 years of age, were married on July 9, 1913 and have lived together as husband and wife since that time. As issue of this marriage, there were 11 children born, 10 of whom presently survive. The parties own a five-room home in Midvale, Utah, which they have occupied for several years up to the present time. In addi-

tion, the plaintiff has a $400.00 bank account. This is all the property the two parties have. The plaintiff has a monthly income from labor of approximately $210. As grounds for divorce, the plaintiff alleged that the defendant treated him in a cruel and inhuman manner as follows:

Despite his objection, the defendant allowed and encouraged younger persons known to be juvenile delinquents and older persons of questionable character and reputation frequently to come to the home for the purpose of "partying." The plaintiff alleged and introduced evidence that at these parties in the presence of the defendant, the minor children and said older persons would play cards and smoke cigarettes; furthermore, that the carryings on at these parties reflected on the respectability and propriety of the plaintiff's home and was detrimental to the welfare of the children. The plaintiff alleged and contended that the environment created by the type of persons invited to the home was not wholesome and was not in the best interests of his children. Mr. Alldredge further alleged and testified that he has repeatedly objected to the presence of said persons in his home and that he had requested his wife not to invite such persons into their home; that to these objections and requests the defendant has turned a deaf ear; that she refused to discuss the matter with the plaintiff. Finally, as a result of the condition existing in their home, the plaintiff has for more than two years been compelled to live separately and apart from the defendant in one room of their home.

In her appeal, the first contention of the defendant is that there is no evidence in the record upon which the court could find defendant guilty of mental cruelty. As this case is an equity case, this court has the duty and the power to determine the facts for itself. However, as was held in *Doe* v *Doe*, 48 Utah 200, 158 P. 781, 786, and *Schuster* v. *Schuster*, 88 Utah 257, 53 P. 2d

428, we will not upset findings of the trial court on issues in which the testimony was in conflict, unless the record shows that such findings are clearly against the weight of the evidence. See also *Stanley* v *Stanley,* 97 Utah 520, 94 P. 2d 465; this because the trial court has a better opportunity to judge the credibility of the witnesses and the weight of their testimony. Especially is this true in cases involving quarrels between spouses.

Both Plaintiff and defendant rely on *Doe v. Doe,* supra, where the court held "Each case must depend upon its own facts and circumstances." The adjudicated cases reveal that courts in cases where the wife bases her action for divorce on mental cruelty require a proof of less aggravated acts or conduct on the part of the husband than in a case where the situation is reversed. This is on the theory, whether valid or not, in this non-chivalrous age of economic equality of the sexes and the wife's emergence from the home into business and professional realms, that the woman is more sensitive than the man and that she is not so much inured to life's buffetings; hence, that acts and conduct on the part of a husband may well constitute cruelty to the "wife causing her great mental distress, when similar acts and conduct on her part may not constitute cruelty to him, or cause him great mental distress." The court said in *Doe* v. *Doe,* supra, "Before a decree is granted the husband on such ground, it ought to be a somewhat aggravated case." In that case, the wife constantly nagged, harassed, annoyed, and rebuked the husband, found fault with him with intent to injure his character and reputation, and made false accusations of sexual immorality against him to his employer and others. The court held that case to be an aggravated one and gave the husband the divorce. In the case of *Schuster* v. *Schuster,* cited above, the court approved the holding of the Doe case. Again in the case of *Cordner* v. *Cordner,* 91 Utah 466, 61 P. 2d 601, the Doe case was cited with approval in the majority opinion. Under the

law of these cases, the question here is whether or not the evidence shows an aggravated case for the plaintiff.

The record shows that there were numerous parties held at the family home in the evenings while the plaintiff was at work, and despite his objection. This situation persisted over a period of years, from 1942 up to the time when this action was brought in January, 1950, during which time most of the persons were minors, only some having reached the age of majority. On these facts, there is no dispute.

As to what was done at these parties, the testimony is in conflict. Several of the young persons to whom the plaintiff objected testified that there was no gambling and that the card game most frequently played was Rook. However, one of the witnesses for the defendant testified that they had played poker. These same young persons testified that they had never smoked in the home when they were minors, but testified that they had smoked in the home after reaching the age of majority. On the other hand, several of the children testified that they had observed those same young persons, when they were minors, smoking in the home in the presence of the defendant. The plaintiff objected to the use of liquor in the home and on this point the evidence is in conflict as to whether or not there was liquor and drinking in the home on several occasions. The last occasion testified to was on New Year's Eve just prior to the time when plaintiff filed his action for divorce. There were several witnesses who testified that there was no liquor in the home on this occasion. Other witnesses testified that there was liquor drinking and that at least one of the persons was drunk.

The evidence shows that all of the invited young persons knew that the plaintiff objected to their presence in the home. On several occasions, he had asked them to leave. One person was asked to leave three times but refused. The alleged persons of questionable character came for the

parties when the plaintiff was at work, from 3 p.m. to 11 p.m., when it was possible to invite the persons without his knowing it until he returned home from work. One of the said persons to whom plaintiff objected had been released from the detention home upon the defendant interceding in his behalf. Thereafter, said person was invited to the home on numerous occasions by the defendant against the plaintiff's protests. Apparently, this person was permanently stigmatized in the eyes of plaintiff as a criminal. The record shows that the defendant refused to discuss with the plaintiff the matter of these parties and the persons coming into the home. He testified, and she did not dispute it, that she told him that she would not give up her friendship for one of the persons objected to and that she would have a divorce in the family first.

It appears to us that where a woman bears a man eleven children she might well complain that he left her quite busy during the fecund period of her life and that when she approached the age of fifty she was entitled to a little surcease even though she may have chosen a somewhat rowdy type of diversion. Though possibly not the fault of the plaintiff that he worked at night, it seemingly would ill become him, who was away during the evening when the children were home, to complain of her not raising the children properly. We think there may have been some wisdom in her argument that it was better to have the children home than roaming about town and that a certain amount of freedom, especially if it did not get out of hand and not too far out of line from plaintiff's apparently puritanical standards, might be necessary to keep the children home. After all, she was left with the task of making the home attractive to them in the evenings when he was absent, and what is attractive to young people is largely governed by the mores of the times, deplorable as one may think that may be. However, in this case the trial court had the witnesses before him and was in a better position to judge

their credibility and weight of their testimony. We cannot say that his conclusion that the conduct of the guests at these parties and the tolerance of the defendant toward that conduct was not such as to cause plaintiff mental distress, which may have materially affected his peace of mind and have eventually made inroads on his health.

On this conflicting evidence, the trial court could reasonably have found, as it did, that the defendant had allowed the minors and others to come to the home, play cards and smoke cigarettes, that the defendant had permitted liquor on the premises, and that this was an unwholesome environment in the Alldredge home and that the knowledge and brooding on these carryings on might have worried and distressed the plaintiff in the light of his temperament to such an extent that he suffered mental cruelty.

The second contention of the defendant is that there was sufficient evidence upon which the court should have found the plaintiff guilty of mental cruelty to her, and that the court should have awarded a decree to the defendant upon her counterclaim. We deem it unnecessary to detail the evidence in support of this contention of the defendant. Suffice it to sum up the matter by stating that the court could find that the allegations of the defendant were not sustained, at least to the extent that she suffered mental distress amounting to mental cruelty. She evidently was of a more emotionally robust type.

Also, it seems probable that at the age of 53, defendant was concerned not so much in the satisfaction of prevailing for the sake of prevailing, or because of any assumed stigma in being adjudged at fault, as she was being assured of the ordinary fruits of wife's victory in a divorce. Apparently, both wanted to be divorced.

As will hereafter appear, although the court in this case denied the wife alimony and attorney fees, we conclude that

he was to that extent in error. While the wife, apparently, and we do not think entirely without reason, considered herself less at fault than her husband for the breakup of the home, we are not so concerned with the question of which of the two should obtain the divorce, because in this state as well as in most states, the common law rule that a wife found guilty of misconduct resulting in a divorce cannot be awarded alimony has been discarded for a rule more in keeping with modern views of ethics and equity as they apply to marital relationships.

In the case of *Doe* v. *Doe*, cited above, wherein the husband was awarded the divorce, the court allowed the wife alimony and attorney fees. The case of *Schuster* v. *Schuster*, cited above, favorably refers to the Doe case in awarding alimony to the guilty wife. In the Schuster case where the court in discussing the Doe case stated at page 431 of 53 P. 2d, "This case [meaning the Doe case] also approves the doctrine that a wife does not necessarily forfeit her right to alimony by conduct entitling the husband to a divorce." In the case of *Flaxman* v. *Flaxman*, 177 Okl. 28, 57 P. 2d 819, the court refers to the common law rule that a wife could not obtain alimony when a divorce was granted by reason of her misconduct. The Flaxman case points out that this rule has been abandoned in many states, either by statute or decision. It was said in that case at page 820, 57 P. 2d, "This court has declared that permanent alimony sufficient to prevent a wife from becoming destitute may be allowed by the court granting a divorce, even though the divorce is granted upon the request of the husband and by reason of the fault of the wife." A recent and persuasive case which is similar to the case at hand is that of *Theis* v. *Theis*, 196 Wash. 667, 84 P. 2d 369, wherein the husband secured a divorce because of the wife's fault. In that case, the parties had been married 25 years and the marital difficulties were of a recent origin. In discussing the acts of cruelty on the part of the wife, the court said, 84 P. 2d at

page 371, "But we do not think that her fault was so grievous that she should be deprived of an allowance sufficient to maintain her in the modest luxury to which she became accustomed as the wife of respondent." Thus, the courts have adopted a modern rule which permits a wife alimony even though her misconduct has caused the divorce, which is much less harsh than the rule of the common law which denied alimony to the wife at fault. The modern view is that the court should, in doing equity, take into consideration all the circumstances and withhold or decree alimony and distribute the property in accordance with those circumstances. Under this rule, a wife of long standing does not forfeit all right to alimony or a share in the property because of recent misconduct, nor in cases where the husband may be equally at fault, nor in cases where there is a doubtful preponderance against the wife because judges, being human, cannot penetrate the family drama with complete understanding. Perhaps such a forfeiture of alimony may not be out of proportion in the case where a young wife guilty of acts of moral turpitude, has opportunity to start married life anew but in a case such as this it would be out of all proportion.

The case of *Cronin* v. *Cronin*, 1944, 245 Ala. 309, 16 So. 2d 714, well illustrates this theory. In that case, the husband was awarded the divorce on the grounds of voluntary abandonment. After observing that the notion that a decree of divorce on these grounds should work a forfeiture of a right to permanent alimony was untenable, the court said, 16 So. 2d at page 716,

"The nature of the misconduct of the wife is for consideration as an aid to judicial discretion in deciding whether the wife should have alimony on divorce, and, if so, the amount thereof. Other considerations, such as years of living and toiling together in mutual effort to make a home, accumulate something by sacrifice of comforts as well as luxuries; the interruption of this way of life by debilities not the fault of either, as well as all the events of the years to follow leading to the final severance of the family relation, become a part of the picture to be viewed as a whole in deciding the best thing to be done."

In considering these equities if the court finds that the wife has been guilty of gross or prolonged immoral conduct an award of alimony may in most cases be denied. For additional recent cases, see *Conner* v. *Conner,* 192 Ark. 289, 91 S.W. 2d. 260; *Guier* v. *Guier,* 200 Ark. 552, 139 S.W. 2d 694; *Riesner* v. *Riesner,* 136 Fla. 129, 186 So. 669; *Grimes* v. *Grimes,* Mo. App., 139 S.W. 2d 1055.

The Utah Code Annotated, 1943, Sec. 40—3—9, provides, "When a divorce is decreed the guilty party forfeits all rights acquired by marriage." The question is whether or not this statute is to be interpreted to include the wife's right to alimony. In the case of *Mitchell* v *Mitchell,* 193 Iowa 153, 185 N.W. 62, the court construed a statute identical with Sec. 40—3—9 with another statute similar in content to our statute Utah Code Annotated 1943, Sec. 40—3—5, which provides:

"When a decree of divorce is made the court may make such orders in relation to the children, property and parties, and the maintenance of the parties and children, as may be equitable; provided, that if any of the children have attained the age of ten years and are of sound mind, such children shall have the privilege of selecting the parent to which they will attach themselves. Such subsequent changes or new orders may be made by the court with respect to the disposal of the children or the distribution of property as shall be reasonable and proper."

The court in that case concluded that the guilty wife did not forfeit her right to alimony. The court reasoned that the right to alimony was one given by the decree of divorce and not one acquired by the marriage, and said at page 65 of the Northwestern Reporter, "Upon this branch of the case, we hold that, under the provisions of our statute, the court has the power upon the granting of a divorce to award alimony to the guilty party in a proper case." The rule of that case was later followed in *Blain* v. *Blain,* 200 Iowa 910, 205 N. W. 785. We think that this is the proper construction to be put on our Utah statutes.

In the case at hand, the parties have been married nearly 37 years and by comparison with this length of time the

marital trouble is of recent origin. The defendant has given birth to eleven children of the plaintiff and raised them without serious objection by the plaintiff prior to the present difficulties. The conduct of the wife has not been gross nor has it involved any moral turpitude. It is not shown that she has any skill which she could ply in order to make herself a living. There is no evidence that the wife has any separate income, and since she is 53 years of age it does not seem likely that she would be able to support herself. Furthermore, there is evidence in the case that she is in ill health. Alimony in this case is necessary to prevent her from becoming destitute. The wife's conduct in this case has by no means been so outrageous so as to cause a forfeiture of alimony. The court concluded that she was a proper person to have the custody of the only remaining child, who is a boy 15 years of age, because since this appeal was taken the trial court has ordered the permanent custody of this child as provided in a stipulation by the parties. In view of facts in this case, the wife should have been awarded permanent alimony. Since the appeal in this case, the court has ordered, as provided in the above mentioned stipulation of the parties, that the wife should take the home and furniture therein, and that the husband should take 64 feet of the real property of the parties along with the garage as well as the $400.00 bank account. This division of the property, as well as the fact that the wife was awarded $35.00 per month as support money for the 15-year-old boy so long as he shall not earn $100.00 per month, should be considered in determining the amount of alimony the wife is entitled to receive.

As additional relief in this case, the defendant asks that she be awarded $300.00 attorney fees. However, at the conclusion of the trial, the court concluded that the plaintiff should not be required to pay any attorney fees whatsoever. The court in *Blair* v. *Blair*, 40 Utah 306, 121

P. 19, 38 L.R.A.,N.S., 269, pointed out that the awarding of counsel fees as well as alimony was in the discretion of the trial court, and that a finding of the trial court would not be set aside in absence of an abuse of such discretion. In *Doe* v. *Doe*, cited above, the husband got the divorce and the wife was awarded alimony and counsel fees. Also, in the case of *Sterling* v. *Sterling*, 145 Md. 631, 125 A. 809, 813, wherein the husband sued for divorce, the court said, at page 813 of the Atlantic Reporter:

> "The general rule is that the wife is a privileged suitor in divorce cases, and if she is without an income competent for her support and the maintenance of the suit, living separated from her husband, the court will allow her alimony pendente lite and money to carry on her suit, without inquiring into the merits."

This rule was first laid down in Maryland in the case of *Hood* v. *Hood*, 138 Md. 355, 113 A. 895, 15 A.L.R. 774. In the case of *Mangels* v. *Mangels*, 6 Mo. App. 481, the court said, "If the husband is plaintiff and cannot furnish his wife with means of defending his suit, he is not entitled to a decree." See 35 A.L.R. 1096 (Note). See further the following cases wherein the wife was awarded attorney fees where the husband was given the divorce: *Visneski* v. *Visneski*, 219 Minn. 217, 17 N.W. 2d 313; *Cates* v. *Cates*, 194 Okl. 414, 152 P. 2d 261; *Nesheim* v. *Nesheim*, 293 Ill. App. 257, 12 N.E. 2d 222, *State ex rel. Brown* v. *Superior Court of King County*, 190 Wash. 572, 69 P. 2d 811.

The reason for permitting a wife suit money to defend an action for divorce rests on the ground that the wife normally has no separate estate from which to pay for bringing or defending the action. This is the situation in the case at hand. Not to allow the wife ██ expenses and counsel fees would in the majority of cases work an injustice by denying her the power to enforce any marital rights she may have. Here, as in the case of alimony, gross or immoral conduct may cause a denial of attorney fees, but such conduct is not found in

this case. It was error for the court to deny the defendant counsel fees which are a part of her costs pendente lite and which could have been required before the suit was concluded. We find $300.00 counsel fees, including the $50.00 previously awarded by the lower court and attorney fees for this appeal, to be reasonable.

The decree of divorce is affirmed and the case is remanded for the purpose of awarding the defendant counsel fees as herein fixed and determining the amount of alimony the wife is entitled to receive. Costs on appeal to the appellant.

·WADE, LATIMER, McDONOUGH, and CROCKETT, JJ., concur.