**Denise R. GRAMME, Plaintiff and Respondent,**

v.

**Andre GRAMME, Defendant and Appellant.**

**No. 15420.**

Supreme Court of Utah.

Nov. 14, 1978.

Rehearing Denied Jan. 18, 1979.

10. Supra, footnote 2.

Joel M. Allred, Salt Lake City, for defendant and appellant.

Ralph J. Hafen, Mark C. McLachlan, Salt Lake City, for plaintiff and respondent.

MAUGHAN, Justice:

Defendant, husband, appeals from a decree of divorce concerning the distribution of the marital estate and the award of alimony and attorney's fees. The judgment of the trial court is affirmed.

The parties were married for a period of thirty-one years. Each was awarded a divorce on grounds of mental cruelty, she, on her complaint and he, on his counterclaim. The parties immigrated to the United States from Belgium approximately two years after their marriage. Plaintiff was employed from approximately 1949 to 1968, at which time she quit at defendant's request. Plaintiff had worked in a laundry, as a presser in a dry cleaning establishment, as a spot welder, as a punch press operator

and assembling jewelry. Her earnings were contributed to the family weal. The parties have one child, an adult daughter, who was married at the time of the hearing.

Defendant is a masonry contractor. He began as a hod-carrier in 1949 and started as a contractor on a part time basis in 1961. A year or two thereafter he started his own masonry contracting business, which was incorporated in 1969. Defendant has been very successful and has had the contracts for masonry work on many commercial buildings. His corporation had gross receipts of $1,432,904.94 in 1975 and $1,176,052.43 in 1976.

Between January 1969 and September 1975, plaintiff was admitted to the hospital on twelve separate occasions. Six of these were for surgical procedures, including a radical mastectomy for cancer. Once was for the treatment of influenza; the remaining five were for psychiatric care. Her psychiatrist diagnosed her condition as a severe anxiety reaction, which was partially attributable to the surgery she had undergone. Plaintiff is in poor health, and has little mobility in her left arm and no feeling in her left hand. She tires easily and has recurring headaches. Her physician testified she was not able to be employed.

Defendant began a relationship with another woman in October, 1975; he made no attempt to conceal his behavior from plaintiff. Defendant took frequent trips with his companion and escorted her to social functions. He appeared to flaunt the relationship to his wife, including displaying gifts he had purchased for his new companion. As a consequence, plaintiff reacted in an erratic manner which defendant characterizes as misconduct. Plaintiff appears to have stabilized her emotions by moving to the parties' home in Carmel, California.

The trial court found the value of the marital estate to be $650,000. Plaintiff was awarded the home in Carmel, California, which the parties valued at $167,500; they had purchased the home for $130,000. Plaintiff was awarded a boat, located in California, with a value of $5,000; a $25,000 savings certificate, and an automobile valued at $2,500. Plaintiff was awarded $1,400 per month alimony; this sum was predicated on findings that she was unemployed and needed this sum and defendant owned and operated his own business and was able to pay such sum. Defendant was awarded the remainder of the marital assets, which included his business, valued at $210,800; a $75,000 savings certificate, a home in Salt Lake City; interest in real property in Park City, San Carlos, Mexico, and Salt Lake City, and various items of personal property including an automobile, airplane, and boat.

On appeal defendant contends that the trial court misunderstood and misapplied the law. The disagreement arose over the admissibility of certain evidence. Defense counsel wanted to introduce evidence concerning plaintiff's conduct in 1976; his proffer of proof concerned plaintiff's alleged attempt to attack physically her sister and sister-in-law, when plaintiff was excluded from her father's hospital room, during his final illness. Defense counsel claimed this incident proved plaintiff's attitude and conduct and why defendant had reasonable apprehension and fear of plaintiff; this fear contributed to the deterioration and ultimate termination of the marriage. Defense counsel contended that he was entitled to put on evidence of plaintiff's misconduct not only to establish grounds for a divorce but for the purpose of determining whether plaintiff's right to alimony or marital property should be forfeited or reduced.

The trial court sustained plaintiff's objection to the evidence, by citing and relying on the language of Anderson v. Anderson.[1] The trial court ruled that in a situation, as here, where both parties have established grounds to entitle them to a divorce, the degree of fault is of no further concern, and the court will consider factors bearing on the parties financial situation and an equitable solution to the problems presented.

1. 18 Utah 2d 286, 288, 422 P.2d 192 (1967).

In connection with the foregoing argument, defendant further contends that the trial court abused its discretion in the award of alimony by not taking into consideration plaintiff's misconduct as a factor.

Defendant relies on *Alldredge v. Alldredge*,[2] wherein this court ruled the trial court erred in denying the defendant, wife, alimony and attorney's fees, although plaintiff husband was awarded a divorce on the ground of mental cruelty. This court cited Section 40–3–9, U.C.A., 1943, which provided: "When a divorce is decreed the guilty party forfeits all rights acquired by marriage." [3]

The issue was whether this statute was to be interpreted to include the wife's right to alimony. This court cited Section 40–3–5, U.C.A., 1943 (currently 30–3–5, U.C.A., 1953), which empowers the court when entering a decree of divorce to make such orders in relation to the property and maintenance of the parties as may be equitable. This court adopted the reasoning that the right to alimony was one given by the decree of divorce and not one acquired by marriage. Therefore, under the provisions of the statute (30–3–5), the court had the power upon the granting of a divorce to award alimony to the guilty party in a proper case.

This court discussed in *Alldredge* certain factors which it considered relevant, viz., the length of the marriage (37 years) and by comparison the recent origin of the marital trouble; the number of children (11); the conduct of the wife was neither gross nor involved moral turpitude; the wife had no skill to make a living or separate income to support herself; and she was in ill health. This court concluded alimony was necessary to prevent the wife from becoming destitute, and her conduct was not so outrageous as to cause forfeiture of alimony.

Defense counsel, using the *Alldredge* case as his authority, argues that if a wife in certain circumstances may forfeit her alimony for misconduct when her husband is awarded a decree of divorce; then in instances where both parties are awarded a divorce, the relative guilt of the wife should be considered as a factor in determining the amount, if any, of alimony.

■ The purpose of alimony is to provide post-marital support; it is intended neither as a penalty imposed on the husband nor as a reward granted to the wife. Its function is to provide support for the wife as nearly as possible at the standard of living she enjoyed during marriage and to prevent her from becoming a public charge. Important criteria in determining a reasonable award for support and maintenance are the financial conditions and needs of the wife, considering her station in life; her ability to produce sufficient income for herself; and the ability of the husband to provide support.[4]

■ A review of the record indicates the trial court did not abuse its discretion in the award of alimony.

■ Defendant further contends the trial court erred in excluding the testimony of certain witnesses, he desired to call, viz., the plaintiff's daughter, sister and brother. Defendant argues that these witnesses would have provided independent evidence of plaintiff's marital fault or misconduct. The court gave defendant an opportunity to proffer proof of the evidence he desired to adduce. The trial court ruled thereafter that he was excluding the evidence under Rule 45, U.R.E., on the ground it was cumulative, it would cause an undue consumption of time, and there was a substantial danger of impairing the familial relationships, and the probative value of the testimony was outweighed by those factors.

**2.** 119 Utah 504, 229 P.2d 681, 34 A.L.R.2d 305 (1951).

**3.** This statute became Section 30–3–9, U.C.A., 1953, it was repealed Laws 1969, Chapter 72, Section 76.

**4.** *English v. English*, Utah, 565 P.2d 409 (1977).

Defendant argues the exclusion of the proffered testimony resulted from a misunderstanding and misapplication of the law and thus constituted an abuse of discretion. Defendant claims the testimony would have materially added to the weight and clarity of the evidence. Thus defendant's argument dovetails into his previous point that the relative fault of the wife should be a significant factor in determining the amount of alimony she should be awarded.

Defendant has failed to establish in what manner the trial court abused its discretion by excluding cumulative evidence in a trial which had already consumed 3½ days of the court's time. The wisdom exhibited by the trial court fulfilled the objective expressed by this court in *Wilson v. Wilson*,[5] viz., to minimize animosities insofar as possible so the parties can reconstruct their lives on a happy and useful basis. To permit defendant to call all of plaintiff's family to detail her aberrational behavior, while she was admittedly suffering from emotional illness, when defendant had previously established grounds for a divorce, would not fulfill the responsibility of the court.

Defendant further argues the decree was inequitable and requires revision. First, the defendant claims the allocation of property and the award of alimony was out of proportion to plaintiff's contributions to the marital estate. He cites the fact that plaintiff was an unskilled worker and the maximum pay she ever received was $2.05 per hour. Further, plaintiff enjoyed an extremely high standard of living and spent money freely, thus according to defendant diminishing the marital estate. Defendant emphasizes that plaintiff brought essentially nothing into the marriage, no property, no educational or employment skills. Further, it was during the time plaintiff was not working and was suffering from physical and emotional illness that defendant increased substantially the net worth of the parties assets, thus plaintiff was a hindrance and not of assistance in the accumulation of assets.

Secondly, defendant contends that the award of permanent alimony was unnecessary and inequitable. Defendant reasons that plaintiff should sell the home in Carmel and live off the income as her means of support.

█ In the distribution of the marital estate, there is no fixed rule or formula. The statutory standard is established in Section 30-3-5, the court may make such orders in relation to the parties as may be equitable. The responsibility of the trial court is to endeavor to provide a just and equitable adjustment of their economic resources so that the parties might reconstruct their lives on a happy and useful basis.[6] In adjusting the rights and obligations of the parties, this court listed fifteen factors which the trial court might consider in *MacDonald v. MacDonald*.[7] Reference has been made to many of them throughout this opinion.

█ A review of the record reveals no injustice or inequity in the distribution of the assets. Defendant provides no reason why his wife of 31 years, who provided sustenance to the family during the lean years, should be deprived of her home and the other luxuries that were the culmination of their joint efforts over the continuum of their marriage. Defendant has attempted to segment their lives and attribute his success solely to the past few years during which his wife has been admittedly ill. Defendant has ignored the substantial contributions made by plaintiff, while he gained expertise in his field and her assistance to him when he first began his own business. He has ignored her substantial investment in their marital venture now that it is time to distribute the dividends. His position is untenable.

█ Finally, defendant contends the trial court erred in awarding plaintiff $8,000 in attorney's fees; he claims with her substantial property award she should be solely responsible.

---

**5.** 5 Utah 2d 79, 83, 296 P.2d 977 (1956).

**6.** *Searle v. Searle*, Utah, 522 P.2d 697 (1974).

**7.** 120 Utah 573, 581–582, 236 P.2d 1066 (1951).

Plaintiff incurred attorney's fees of $14,-920, which included $2,500 for an attorney she had previously retained. Plaintiff was compelled to engage in extensive discovery, particularly in regard to the assets and defendant's ownership thereof, which in several instances he claimed were owned by others. There is no basis in the record after reviewing the circumstances to deem the fractional award of attorney's fees to plaintiff as an abuse of discretion.

ELLETT, C. J., and CROCKETT, WILKINS and HALL, JJ., concur.

PER CURIAM:

Pursuant to respondent's petition for rehearing in this case, the Court makes the following addendum to the decision heretofore rendered: The case is remanded to the district court to determine whether considerations of equity and justice require the making of a further award to plaintiff of attorney's fees incurred because of this appeal; and if so, the amount.[1] With such amendment the petition is denied.

---

1. Eastman v. Eastman, Utah, 558 P.2d 514.