Barbara Lynn JEPPSON, Plaintiff and Appellant,

v.

Charles Belnap JEPPSON, Defendant and Respondent.

No. 18709.

Supreme Court of Utah.

June 29, 1984.

D.L. Dart and John D. Parken, Salt Lake City, for plaintiff and appellant.

William G. Marsden, Salt Lake City, for defendant and respondent.

STEWART, Justice.

The plaintiff, Barbara Jeppson, appeals a lower court decision to terminate alimony payments that Mrs. Jeppson was awarded in the original divorce action between her and the defendant, Charles Jeppson.

The Jeppsons were divorced in 1970 after a ten-year marriage in which they had two children, a son and a daughter. The divorce decree ordered Mr. Jeppson to pay $275 per month in alimony and $150 per month in child support for the two children who lived with Mrs. Jeppson. In 1978, the court modified the decree by reducing the alimony to $150 per month and increasing the child support to $200 a month for the one daughter who still resided with Mrs. Jeppson.

In 1982, Mrs. Jeppson petitioned the court to increase her alimony, and Mr. Jeppson cross-petitioned to terminate the alimony. The court ordered that the alimony terminate in June 1983, one year after the hearing. We affirm the trial court's ruling.

■ Modification of a divorce decree is an equitable matter. Although this Court may review both the facts and the law, *Christensen v. Christensen*, Utah, 628 P.2d 1297, 1299 (1981), we typically accord "considerable deference to the judgment of the trial court due to its advantaged position and will not disturb the action of that court unless the evidence clearly preponderates to the contrary, or the trial court abuses its discretion or misapplies principles of law." *Id. Accord, e.g., Openshaw v. Openshaw*, Utah, 639 P.2d 177 (1982); *Fletcher v. Fletcher*, Utah, 615 P.2d 1218 (1980). *See also Lord v. Shaw, supra; Turner v. Turner*, Utah, 649 P.2d 6 (1982).

■ A party who requests a modification of a divorce decree must initially show that a substantial change in the circumstances of at least one of the parties has occurred. *E.g., Lord v. Shaw*, Utah, 682 P.2d 853 (1984); *Haslam v. Haslam*, Utah, 657 P.2d 757 (1982); *Christensen v. Christensen, supra.* A relative change in the income and expenses of the parties, if comparatively significant, can amount to a substantial change in circumstances. *Christiansen v. Christiansen*, Utah, 667 P.2d

592 (1983). The facts of this case support the trial court's finding of a substantial change in circumstances. Mrs. Jeppson's financial responsibilities have decreased since 1978 because her daughter no longer resides with Mrs. Jeppson, and she provides no support for her daughter. Mr. Jeppson's financial responsibilities have increased, while his income has increased only slightly. In 1978, Mr. Jeppson paid child support to Mrs. Jeppson to assist her in caring for the daughter's financial needs, but after the 1978 hearing the daughter moved in with Mr. Jeppson, and he has supported her without assistance from Mrs. Jeppson. Additionally, at the 1982 hearing, Mr. Jeppson testified that he planned to pay for his daughter's college education.

■ The purpose of alimony is to enable the spouse who receives alimony to maintain, as nearly as possible, the standard of living that was enjoyed during the marriage. *Gramme v. Gramme*, Utah, 587 P.2d 144, 147 (1978). Criteria to be considered in awarding alimony include:

> The financial conditions and needs of the wife, considering her station in life; her ability to produce sufficient income for herself; and the ability of the husband to provide support.

*Id.* at 147 (footnote omitted). *Accord Higley v. Higley*, Utah, 676 P.2d 379 (1983).

■ The trial court's termination of alimony was not an abuse of discretion. In 1972 the Jeppson's twelve-year-old son moved in with Mr. Jeppson, and Mr. Jeppson became primarily responsible for the son's financial needs. Mrs. Jeppson owns a condominium in Oregon that she rents to tenants and in which she has almost $45,000 in equity. She also owns stocks worth $6,000 to $8,000,[1] and a car that cost $7,100, and receives $260 per month in rental income in Salt Lake. Mr. Jeppson has paid alimony for thirteen years, and his

---

1. Mrs. Jeppson claims that her stocks should not have been considered by the trial court in 1982 since they were available in 1978. However, the court in alimony cases should consider all the circumstances, including various sources of income, as well as assets. *Sorensen v. Sorensen*, 20 Utah 2d 360, 438 P.2d 180 (1968).

income has only increased from $26,000 in 1978 to $30,000 in 1982.

The 1970 divorce decree required that alimony continue only "until such time as [Mrs. Jeppson] is in a position to properly maintain herself in the style in which the defendant has maintained her, which manner, of course may be reviewed by the court at any time." Although no time limit was set for the payment of alimony, the language of the decree indicates that alimony was not to be permanent.

Mrs. Jeppson obtained a college degree and a teaching certificate during her marriage. From 1972 to 1980, Mrs. Jeppson worked as a legal secretary and earned $10,000 to $13,000 a year. Since 1980, Mrs. Jeppson's income has decreased due to a manic-depressive condition. The condition does not seem to have affected Mrs. Jeppson's earning capacity until 1980, ten years after the divorce. As a child, Mrs. Jeppson suffered seizure disorders, but there is no evidence that she was under treatment for that condition during the marriage. She does not claim that her present illness resulted from her marriage or from any actions by Mr. Jeppson.

Although Mrs. Jeppson suffers from a mental illness, her psychiatrist testified that there are numerous jobs for which Mrs. Jeppson could qualify. A psychologist testified that Mrs. Jeppson's depression would possibly lift within the next year. Mrs. Jeppson was to begin a new job the day following the hearing. Even though Mrs. Jeppson's illness may prevent her from achieving her highest earning capacity, the trial court concluded that her ability to perform some work, plus the assets she has available to her, are sufficient for her to support herself and that she is not in danger of becoming a financial burden to the public. On these facts, the trial court acted within its discretion.

Affirmed. Costs to respondent.

HALL, C.J., and DURHAM, J., and JUDITH M. BILLINGS, District Judge, concur.

HOWE, Justice (dissenting).

I dissent. I believe that if this case is approached from the standpoint of whether there was a material change of circumstances between 1978 and 1982, the trial court's elimination of alimony cannot be sustained.

The parties were divorced in 1970 at which time Mrs. Jeppson was awarded $275 per month alimony. Later, in 1978, the parties were again before the court and the alimony was reduced to $150 per month. When the parties were again before the court in 1982, it was the burden of Mr. Jeppson to show that there had been a material change of circumstances since 1978 which would justify the elimination of alimony altogether. Otherwise, under principles of res judicata the 1978 determination could not be disturbed.

In my opinion, this burden was not met. In 1978, Mrs. Jeppson was employed as a legal secretary in Oregon earning $10,732 per year. Since that time, she lost that employment and eleven subsequent jobs. At the time of the 1982 hearing, her emotional condition did not permit her to hold any job which would place her under stress. She could no longer work as a legal secretary nor as a classroom teacher for which she had been educated. Her personal earnings had dropped to $8,087 in 1980 and to $6,445 in 1981. She had earned only $700 in the five-month period in 1982 preceding the hearing below. It is true that she was about to start at new employment as a salesclerk in a greeting card store, but she was to be on a trial basis for the first month and her pay was to be only $3.75 per hour.

In 1979, Mrs. Jeppson traded her equity in a house in Salt Lake City, which she was awarded in the divorce, for a condominium in Oregon. After she lost her employment as a legal secretary, she could no longer afford to live in it so she moved back to Salt Lake City. She rented out the condominium, but the rent was insufficient to cover her mortgage payments and expenses, resulting in a net loss of approximately $675 per year. The equity had not

increased appreciably since 1979. She owned approximately $6,000 in stocks but these were owned by her in 1978. The majority opinion states that they were not considered by the trial court at the 1978 modification hearing. There is no evidence to that effect. The only evidence on this point was Mrs. Jeppson's testimony that she could not remember whether the trial court in 1978 was made aware of the existence of the stocks. She added, however, that there was no reason why she would not have been open about it. Mr. Jeppson presented no evidence on this point. I therefore think that the assumption made by the majority opinion is unwarranted.

Mr. Jeppson in 1982 was earning approximately $4,000 per year more than he had earned in 1978. However, his minor daughter was living with him in 1982 instead of with her mother as she had in 1978. The daughter intended to soon enroll at a university, and Mr. Jeppson was planning to provide the cost of her tuition and her support. Thus, while his income had increased, so had his expenses. His net financial position had not materially changed, and the trial judge commented that he was still capable of paying the $150 per month.

In sum, Mrs. Jeppson's financial position in 1980 had deteriorated considerably from 1978 because of her emotional problems, which kept her from the remunerative employment she had previously enjoyed. She had the same stocks as in 1978; they had not increased in value. The equity which she had in her house in 1978 had been exchanged for an equity in a condominium without any material increase in value. While she was receiving rent from the condominium in 1982, this was offset by the fact that she had to now make mortgage payments in excess of that rent and had to pay rent on her residence in Salt Lake City. There was no evidence that she had any equity in her automobile for which she was paying $180 per month. Even if she were to liquidate her equity in the condominium and her stocks, which she estimated would total $51,000, and were to invest that amount for her support, it would yield, at 10 percent per annum, $5,100 per year. That income plus her employment at $3.75 per hour would still leave her short of her 1978 level of income.

On the basis that there has been no material change of circumstances favorable to Mrs. Jeppson, I would reverse the termination of alimony by the trial court. I agree that Mrs. Jeppson's emotional problems did not result either from the marriage or from Mr. Jeppson's conduct and that there is no risk of her becoming a public charge. However, those facts do not diminish her right to the alimony awarded her in 1978 in the absence of a material change of circumstances. Neither is it material that she has received alimony for twelve years, a fact that troubled the trial judge and apparently influenced his decision.

OAKS, J., having resigned, does not participate herein; JUDITH M. BILLINGS, District Judge, sat.