[No. 27088. *En Banc.* November 12, 1938.]

FLORA B. THEIS, *Appellant,* v. CHARLES THEIS, *Respondent.*[1]

*Joseph J. Lavin* and *Williams & Redfield,* for appellant.

*Horace Kimball* and *Danson, Lowe & Danson,* for respondent.

BLAKE, J.—Plaintiff brought this action for divorce, alleging facts sufficient to constitute "cruel treatment . . . or personal indignities rendering life burdensome." She prayed for five hundred dollars a month alimony and "an equitable division of the property of the parties in accordance with [their] rights and merits." The defendant countered with a cross-action on the same grounds. He set up two property agree-

[1]Reported in 84 P. (2d) 369.

ments; one antenuptial, the other postnuptial. He prayed that all property, except twenty-five shares of Bohemian Breweries, Inc., and an automobile, be decreed his separate property. He prayed further that, if the court deemed plaintiff entitled to any allowance, "the same be fixed at such sum as is equitable under the circumstances, and not to exceed one hundred dollars per month."

The court entered an interlocutory decree granting defendant a divorce, and awarding plaintiff twenty-five shares of Bohemian Breweries, Inc., an automobile, $7,500 cash, $100 per month alimony, and $750 attorney's fee. Plaintiff appeals.

At the time the parties were married (1914), the respondent was a widower with a family of seven children, ranging in age from seven to twenty-four or twenty-five years. For a year and a half before their marriage, appellant had been the family housekeeper. At the time of their marriage, respondent was a man of large means—worth approximately a half million dollars. The appellant had little or nothing. They entered into an antenuptial agreement, whereby appellant agreed to lay no claim to respondent's property or its increment, in consideration of the latter's execution of a will devising an eighth of his estate to her. In 1924, a new agreement of the same tenor was executed, pursuant to the terms of which respondent executed a new will, again devising one-eighth of his estate to appellant. By this time, however, the value of respondent's estate had dwindled to a value of twenty or thirty thousand dollars. This shrinkage was the result of prohibition, the major portion of his property consisting of stock in the Inland Brewing and Malting Company.

In 1916, when prohibition became effective, the plant of the Inland Brewing and Malting Company was

adapted to the making of near-beer, cider, and food products. The name was changed to Inland Products Company. With the exception of a year or two from then until 1933, the plant was operated at a loss, or with very little profit. In 1924, in order to keep going, it was necessary to float a bond issue of $150,000.

With the repeal of prohibition, the tide turned. Under the name of Bohemian Breweries, Inc., it was the first company in the northwest to put beer on the market. In 1933, it made a net profit of $155,000. Its average net profit for five years has been in excess of $119,000. The bonds have been retired, and in 1936, a dividend of twenty dollars a share was declared. One of the officers predicted a dividend of five to ten dollars a share for 1937. In addition, the company pays, among others, the following annual salaries: $9,000 to respondent; $8,400 to one of his sons; $2,400 to another; and $3,600 to a son-in-law. Of 5,000 shares of company stock issued, Mr. Theis owns 1,266.

We have gone into this history of Bohemian Breweries, Inc., by way of introduction to such comment as we shall make on the evidence and the findings, because we are persuaded, as was the trial court, that the post-prohibition prosperity of the brewery is the underlying cause of this action. For we can find nothing in appellant's evidence that would warrant a divorce in her favor. On the contrary, it is apparent that, as the prosperity of the brewery and the family grew, she became the victim of a discontent which culminated in this action. The cause of her discontent was, of course, grounded in dissatisfaction with the share of respondent's estate which she would receive under the will of respondent, made pursuant to the ante- and postnuptial agreements to which we have referred. Her discontent was manifested in a disposition to nag respondent—charging him with being

penurious, complaining of the agreement and will, being jealous of his generosity toward his children. We are satisfied from the evidence that she made respondent's life miserable to a degree that warranted the court in finding that her "acts . . . constitute cruel treatment and personal indignities rendering . . . life burdensome."

But we do not think that her fault was so grievous that she should be deprived of an allowance sufficient to maintain her in the modest luxury to which she became accustomed as the wife of respondent. After all, she went through the hard years of prohibition with him, sharing his anxieties, mothering his children, and managing his home with a high degree of efficiency. We think that the allowance made by the trial court was insufficient to maintain appellant in the comfortable life that she has enjoyed as respondent's wife, and that it is incompatible with his present financial worth.

The court found that the stock of Bohemian Breweries, Inc., was worth fifty dollars a share. We infer that this valuation, to a large degree, formed the basis of the allowance made to appellant. In drawing this inference, we do not overlook the fact that the court found the property, with trivial exceptions, to be the separate property of respondent, and in passing, we may say that we think the finding is supported by the preponderance of the evidence. But we cannot agree that the preponderance of the evidence supports the finding that the stock of Bohemian Breweries, Inc., was worth but fifty dollars a share. As of November 1, 1937, the net worth of the company was in excess of $800,000. The book value of the stock was, therefore, approximately $160 a share. As we have seen, a dividend of twenty dollars a share was paid in 1936, and it was estimated that a dividend of five to ten dollars

a share would be paid in 1937. Over a period of five years, the net average annual earnings of the company equaled approximately twenty-four dollars a share.

Upon any basis suggested by the evidence of ascertaining the actual value of stock, not bought and sold on the open market, the stock of Bohemian Breweries was worth at least its book value—probably much more.

So, respondent's holdings in Bohemian Breweries, Inc., alone are worth, conservatively, in excess of $200,-000. He has other assets which, under the values found by the court, bring the value of his estate at the present time to $250,000. In addition, his salary is $9,000 a year. Under present conditions, dividends on his stock may be expected to yield an equal income.

In view of respondent's financial condition, and still bearing in mind that appellant is at fault, we think that she is entitled to an allowance that will, during the remainder of her life, maintain her in a condition of comfort commensurate to that which she enjoyed as respondent's wife. A mere allowance of alimony will not accomplish that. For respondent is past seventy, while appellant is under sixty. Upon his death, alimony will cease. Upon the happening of that event, under the decree of the trial court, appellant will have had only $7,500 to show for her devoted service to respondent and the community for a period of more than twenty years. For it must be remembered that the discord giving rise to this action is of recent origin.

Assuming that appellant has the $7,500 intact at respondent's death, the amount will be utterly inadequate to maintain her in anything like the degree of comfort she has enjoyed as respondent's wife. It may be said that she has voluntarily—perhaps wilfully—abandoned her position as such. It may be said with much force that she should have been satisfied with

the ante- and postnuptual agreements made with respondent. But, conceding the validity of such argument, and conceding that she exercised bad judgment in repudiating the agreements, still we do not feel her fault was such that she should be condemned to a life of comparative penury upon the death of respondent—particularly in view of respondent's great affluence.

Under the circumstances disclosed by the evidence in this case, we cannot acquiesce in putting off a wife of twenty-five years with $100 a month alimony and a cash allowance of only $7,500. In order that appellant be adequately protected after the death of respondent, we think the cash allowance should be raised to $20,000. The income from that amount will not be incompatible with her needs. And certainly the allowance of $20,000 is not incommensurate with respondent's wealth.

The cause is remanded, with directions to modify the decree by raising the cash award from $7,500 to $20,000. In all other respects the judgment is affirmed. Appellant will be allowed $1,000 attorney's fees as costs on appeal.

ALL CONCUR.