Estate of Frances B. Willson, Deceased, Carolyn M. Heenan, Executrix v. Commissioner.
Estate of Willson v. Commissioner
Docket No. 56434.
United States Tax Court
T.C. Memo 1957-89; 1957 Tax Ct. Memo LEXIS 162; 16 T.C.M. (CCH) 375; T.C.M. (RIA) 57089; May 29, 1957
*162 Harry W. Glensor, Esq., Mills Building, San Francisco, Calif., for the petitioner. Thomas M. Mather, Esq., for the respondent. WITHEY
Memorandum Opinion WITHEY, Judge: The Commissioner has determined an income tax deficiency against Frances B. Willson, now deceased, for the taxable year 1948 in the amount of $2,847.35, of which only $2,775.75 is at issue. The sole question presented by the pleadings is whether respondent erred in adding to her taxable income for 1948 the amount of $11,139.79 as an amount paid to her by her divorced husband under the terms of a divorce decree for her support and maintenance. Frances B. Willson died August 23, 1956, and the duly appointed and qualified executrix of her estate, Carolyn M. Heenan, has by motion granted as such been substituted as petitioner herein. [Findings of Fact] The facts have been stipulated in their entirety and are adopted as our findings of fact by this reference. Frances B. Willson, hereinafter designated as decedent, and Joseph S. Civelli were married in July 1941. On December 13, 1945, they entered into an agreement incident to a contemplated divorce, which agreement, after noting the separation *163 of the parties, in pertinent part is as follows: "WHEREAS, said parties desire fully and finally to adjust, determine and settle their property rights and all rights to support and maintenance, as herein provided: "WHEREFORE, in consideration of the premises and of the mutual promises, covenants and agreements herein contained, it is agreed between said parties as follows: "1. Second Party [Civelli] shall pay to First Party [decedent] the total sum of $31,300.00, lawful money of the United States, said sum to be paid as follows: Namely, the sum of $1,300.00 in lawful money of the United States, shall be paid to first party upon the execution of this agreement, and the further sum of $30,000.00 shall be paid to first party upon the approval of this agreement by a court of competent jurisdiction as hereinafter provided. Second party shall pay to first party the further sum of $500.00 per month, in lawful money of the United States, commencing with the month of February, 1946, and each and every month thereafter so long as said second party shall continue in the employment of 'The Emporium', San Francisco, California, or in any similar employment from which he shall receive *164 compensation comparable with the compensation of his present employment. "2. First party shall have the bedroom furniture of the bedroom now occupied and used by first party in the former home of the parties at 664 Woodstock Road, Hillsborough, California, (excepting floor coverings, drapes and curtains) and such other furniture as was brought to said premises by first party, all the above furniture consisting of the following: "Bedroom furniture and lamps, bathroom furniture, bathroom fixtures (2), dressing room furniture, one living room couch and two tables, one new coffee table, two living room table lamps, two hanging Chinese figures, two dining room crystal lamps. "First party to also have a ladies fur coat now charged at Magnin's and for which second party agreed to pay, and also that certain $10,000.00 life insurance policy, on the life of second party, now a part of a group life insurance policy of employees of said 'The Emporium', which policy second party agrees to assign and deliver to first party, and second party agrees to keep and maintain said policy in full force and effect if possible. All of the foregoing mentioned in this paragraph to become and be henceforth *165 the sole and separate property of first party, without any claim or claims of second party to any part thereof. * * *
"11. It is distinctly understood and agreed that this agreement is not intended to nor does it bind either party hereto as to her or his respective course concerning the prosecution or the defense of any action for divorce or as to any fact necessary to the prosecution or defense thereof, and the parties hereto shall be and are entirely free as to their respective actions in the same or any proceeding therein, save and except as to the property rights of said parties, including costs of court, counsel fees, alimony pendente lite, maintenance and support, all of which are specifically and fully, finally and completely agreed upon and determined in this agreement, and this, even if in conflict or other contravention to any decree that may or might be entered in any such proceeding or proceedings. In the event any decree of divorce is obtained by either party in said or any action, this contract may be presented to the court in which said proceeding is had for its approval, and, subject to the approval of the court, this agreement may be incorporated into and be *166 made a part of any interlocutory or final decree or judgment which may be granted in said or in any action for divorce." The agreement otherwise provided for a general division of all property of either party not specifically referred to therein and that neither party would look to the other or his estate for other property or money. Civelli's earnings for the years 1942 through 1945 were: 1942 salary and bonuses
$54,426.57
1943 salary and bonuses
51,065.35
1944 salary and bonuses
71,173.66
1945 salary and bonuses
58,593.25
On February 1, 1946, the parties were divorced by a decree of the Second Judicial District Court of the State of Nevada in and for the County of Washoe granted to decedent as plaintiff. The agreement above referred to was adopted by the court as a complete disposition of the property rights of the parties and all matters pertaining to the support and maintenance of decedent and was incorporated for that purpose in its decree. On April 23, 1946, decedent married Ralph W. Willson. Civelli failed to make the monthly payments decreed by the divorce court and called for by the pre-divorce agreement and in consequence decedent in 1947 brought *167 suit to enforce payment of those amounts in The Superior Court of the State of California in and for the County of San Mateo. That court rendered its judgment for decedent March 9, 1948. The judgment was coupled with the court's finding of fact wherein it was preliminarily determined - "That each and all of the allegations contained in plaintiff's complaint and in plaintiff's supplemental complaint herein are true and are sustained by the evidence." No "supplemental complaint" has been presented or offered in evidence here, but the complaint referred to in the court's finding of fact in part declared as follows: "That in and by said agreement, plaintiff and defendant, did settle and divide their community property rights between themselves, as set forth in said agreement, and to provide and pay to plaintiff her share of said property, defendant did promise and agree to pay plaintiff the sum of $31,300.00, which said sum defendant has paid to plaintiff as therein provided; and, in addition thereto, defendant promised and agreed to pay to plaintiff the further sum of $500.00 per month in lawful money of the United States, commencing with the month of February, 1946, and each and *168 every month thereafter so long as defendant shall continue in the employment of 'The Emporium', San Francisco, California, or in any similar employment from which he shall receive compensation comparable with the compensation of his employment at the time of entering into said contract, and, in addition thereto, defendant agreed to deliver to plaintiff, that certain $10,000.00 life insurance policy on the life of defendant, which, on said December 13th, 1945, was part of a group life insurance policy of the employees of said 'The Emporium', and defendant agreed to keep and maintain said policy in full force and effect, if possible. * * *" The findings of fact and conclusions of law of the Nevada court were incorporated in the California court's findings expressly. The judgment of the latter court was in the amount of $15,428.92. The judgment was settled by the compromise payment by Civelli to decedent of $13,750 at an undisclosed date in 1948. Of that amount, $12,500 was claimed as an alimony deduction by Civelli in his income tax return for 1948. The deduction was disallowed and the resulting deficiency determined by the Commissioner was paid by him. Civelli died on December 19, 1950. Thereafter, *169 and on August 29, 1951, Helen Brown, the duly appointed and qualified executrix of the last will of Civelli, filed a timely claim for refund of the tax deficiency previously paid by him. The claim was rejected and, on July 18, 1952, the executrix filed suit in the United States District Court for the Northern District of California, Southern Division, to recover the collected tax. On May 14, 1954, the findings of fact, conclusions of law, and the judgment of the United States District Court were filed. Decedent was not a party to this action. By its judgment the District Court ordered refunded to Civelli's estate and certain beneficiaries under his will the amount of the deficiency he had paid together with interest thereon. The payment of $11,139.79 by Civelli to decedent in 1948, being the accumulated $500 monthly payments in the settlement of the enforcement suit, was for her support and maintenance in accordance with the terms of a decree of divorce entered by the Second Judicial District Court of the State of Nevada February 1, 1946. In arriving at our ultimate finding of fact, which is dispositive of the issue presented, we are not aided by the history of the transactions *170 here involved nor by the testimony of any real party in interest inasmuch as both parties to the pre-divorce agreement and the divorce action are now deceased. Our decision must be reached solely upon the decree and judgment of state courts presented by stipulation. [Opinion] If, as petitioner contends, the decree of the Second Judicial District Court of Nevada, in providing for monthly payments of $500 each by Civelli to decedent, was intended by that court to constitute a division of community property of the parties, it would not be taxable income to decedent under section 22(k) of the Internal Revenue Code of 1939. On the other hand if such payments were intended by that court to discharge Civelli's marital obligation to maintain and support decedent, the amount here in controversy would be taxable to her under that section for the year 1948. No other issue is here presented. It is the general rule that, under state law relating to divorce and to criminal actions for non-support, the measure of a husband's liability to provide support for his wife is his ability to pay. Lamborn v. Lamborn, 80 Cal. App. 494, 251 P. 943; Cruikshank v. Cruikshank, 49 Cal. App. 186, 121 P. 2d 25; *171 Theis v. Theis, 196 Wash. 667, 84 P. 2d 369; Maben v. Maben, 67 Iowa 284, 25 N.W. 244; Westphal v. Westphal, 132 Md. 330, 103 A. 846; Harding v. Harding, 144 Ill. 588, 32 N.E. 206; State v. Karagavoorian, 32 R.I. 477, 79 A. 1111. Neither the decree of the divorce court nor the judgment of The Superior Court of the State of California in and for the County of San Mateo expressly categorizes the $500 monthly payments called for by the decree of the former. Viewed in the light of the general rule, however, we think both documents are sufficiently definitive that a conclusion is required that such payments constitute the periodic payments in discharge of a marital obligation of Civelli to support the decedent. The divorce decree which is also embodied in the findings of the California court requires the husband to continue indefinitely the $500 monthly payments to decedent so long as he is employed in the same or similar employment as that in which he was engaged at the date of the issuance of the decree. The divorce court clearly intended that, as to those payments, they should continue only so long as the husband's *172 ability to support decedent remained substantially unchanged. The pre-divorce agreement contains the same provision. Indeed, the agreement constitutes the decree of the divorce court relative to division of property and provision for decedent's support and maintenance. It might well be argued here that the divorce decree does, at least by strong implication, categorize the payments in controversy as support money, for examination of the decree discloses that the court in incorporating the agreement as part of its decree did so in order "That all matters concerning the support of plaintiff and the property rights of plaintiff and defendant" be disposed of by its decree. Reference to the agreement discloses that all its provisions are clearly related to the division of property then existing with the exception of the monthly payments here involved. The only justifiable conclusion to be drawn is that the divorce court intended to provide for decedent's support and maintenance by ordering such payments. The fact that California law does not require a husband to support his divorced wife after her remarriage is of no consequence here, for the parties had contracted for such support by *173 their pre-divorce agreement, and it was because that contract had been approved by the divorce court that judgment was rendered by the California court in favor of decedent. The fact issue here in controversy has been considered and decided by the United States District Court for the Northern District of California, Southern Division, in Brown v. United States, 121 Fed. Supp. 106. Decedent was not party to that proceeding. That court's decision was rendered upon the question whether the Commissioner had erred in disallowing Civelli's deduction from his taxable income of the monthly payments here involved under section 23(u) of the 1939 Code. In granting Civelli a refund of tax paid by him as a deficiency because of such disallowance, the court found as a fact: "The monthly payments of $500 agreed to be paid by Joseph S. Civelli to Frances B. Civelli were for the purpose of providing for the support of Frances B. Civelli. The said payments were entirely contingent upon Joseph S. Civelli's future income from his employment and were agreed upon as the method by which he should discharge his marital obligation of support. Notwithstanding the fact that Frances B. Civelli *174 remarried shortly after the Nevada divorce, such remarriage did not change the nature of the said monthly payments as being for the support of Frances B. Civelli, who upon remarriage became Frances B. Wilson [sic]." We agree with its conclusion and the underlying reasons therefor. We are not impressed by petitioner's argument that the findings of fact by the California court, that all of decedent's allegations contained in her complaint to that court are true, estop this court from considering the issue here presented, for we have found as a fact that the language used in the complaint (virtually the same as that used in the pre-divorce agreement) does not, as petitioner contends, relate solely to a division of community property, but does have reference to the support of decedent. Decision will be entered under Rule 50.